Anthony J. Di Gtovanna, J.
This is an article 78 (Civ. Prac. Act) proceeding in which the following relief is sought: (1) an order directing the Board of Education to comply with the order of this court dated July 6,1960; (2) directing the Board of Education of the City of New York to furnish petitioner with copies of all findings, all official reports, and all medical reports pertaining to petitioner; (3) permitting petitioner and her representative to examine her personnel file; (4) declaring the Principal’s report to be null and void; (5) declaring the hearing held on December 8,1961 to be null and void; (6) declaring any resolution adopted by the Board of Education or the Superintendent of Schools requesting the Medical Board of the Teachers’ Retirement System of the City of New York for a medical examination of the petitioner to be null and void; and (7) directing the Board of Education to withdraw its request from the Medical Board of the Teachers’ Retirement System for a medical examination of the petitioner.
In paragraph 38 of the petition it is alleged: ‘1 that the report of the Principal, dated February 27, 1961 * # * which was prepared and delivered to petitioner after the Principal received copies from the Board of Education and the Board’s resolution (Petitioner’s Ex. 2) was part of a design and scheme to force petitioner to retire and that the report of the Principal was without foundation since petitioner had been in the school for only 15 working days and petitioner alleges that the Principal’s report was contradictory and illegal since said Principal had given petitioner a satisfactory rating for the period involved.”
Paragraph 34 et seq., of the petition refer to a prior proceeding for similar relief which resulted in an order of this court on *756 July 6, 1960 by Mr. Justice Brown (33 Misc 2d 1075) nullifying the prior and similar actions of the respondents. The Board of Education will hereinafter be referred to as Board, and the Teachers’ Retirement System as Retirement.
In order to understand the contentions it is necessary to analyze the prior proceedings and for that purpose the record contained in the Kings County Clerk’s office, Index No. 492/1960, is incorporated herein.
The prior petition alleged that petitioner was appointed on December 1, 1925 to the position of teacher-clerk which title has since been changed to school secretary; she holds tenure, and is a member of the Teachers’ Retirement System administered by the respondent, Retirement Board.
On May 1, 1959 she received a copy of a letter from the Acting Junior Principal of Public School No. 4 addressed to the Division of Personnel wherein was requested a medical and physical examination of petitioner. The grounds stated for such request were “ The reasons of frequent illnesses and absences, constant complaints about the state of her health, the physical conditions of the office and her refusal to sign the timeboolc accurately.” By letter dated May 8, 1959 she was directed to report at the office of the Board of Education headquarters on May 11,1959. On her appearance she was reassigned to the “In-Service Training Division ” located at the central office of the Board.
On May 20 she was directed to appear before the Medical Director of the Board. She did so appear and was examined. She was then directed to appear for a further examination before a Dr. Bernard Shulman at his office on June 4, 1959 and did so appear and was examined. On September 9, 1959 the petitioner requested in writing an opportunity to see her personnel file as well as medical reports, but in response she received a letter dated September 14, 1959 from the Associate Superintendent requesting that she call at his office on September 25, 1959 “ in reference to her ability to render continuous and efficient service as a teacher in the public schools of the City of New York ”. It was further stated in the letter as follows: “ Permit me to inform you that under the provisions of Section 105(a) of the by-laws of the Board of Education, you are hereby permitted to be accompanied by and advised by an employee of the Board of Education. If you desire to be accompanied by such advisor, you must inform me of the name of the school of such advisor at least 3 days prior to the date set for the interview.” According to the petition she did so appear “ and answer questions put to her ’ ’.
*757 By letter dated October 22,1959 the secretary of the Board sent her a letter in which the following resolution appeared: “ Resolved, that in accordance with the provisions of Section B20-42.0 of the Administrative Code, the Board of Education requests the Teachers Retirement System, to retire, because of disability, Esther Frank, school secretary, assigned to Public School 4, Brooklyn.” She then retained the present attorneys who, on October 26,1959 addressed a letter to the Superintendent of Schools containing the following request: “ Will you be kind enough to submit a statement to my office, setting forth the nature of the disability, with as much of a detailed summary as possible.” Instead of complying with the request of the petitioner, a letter was addressed to the attorneys on November 6, 1959 by the law secretary of the Board in which the following appears: “ Please be informed that it is contrary to the practice of this Department to disclose the nature of the disability which prompted the Board’s request to the Teachers’ Retirement Board.”
On November 20, 1959 the Retirement addressed a letter to the petitioner advising her of the resolution concerning her retirement, requesting the furnishing of information on stated forms and calling her attention to section 104 of the by-laws of the Board of Education which provided as follows: “ A member of the Teachers’ Retirement System shall submit to a medical examination by the Medical Board of the Retirement Board when requested so to do by the Retirement Board pursuant to an application by the Board of Education under Sec. B20-42.0 of the Administrative Code, that said teacher be retired for disability. Neglect, refusal or failure to submit to such medical examination shall be deemed an act of insubordination.” In a postscript to the letter her attention was called to the fact that an opportunity was being given to her to retire on her own application making it unnecessary to undergo further medical examination. In response thereto the petitioner wrote to Retirement through her attorneys on December 3, 1959 and the following appears therein: “At no time has the Board of Education advised Miss Frank of the nature of the alleged disability.” Attention is focused in this letter to the various other communications previously sent which had denied her requests for inspection of her records. The attorneys said in such letter: ‘1 Under such circumstances, I think that you will readily admit that it would be virtually impossible for Miss Frank to file any forms with you.” Retirement was further advised that the petitioner did not desire to retire for disability or service and a further request was made for inspection of the *758 records. Instead of responding properly to that letter, a further letter was sent recalling her attention to section 104 of the bylaws and again refusing permission to inspect. Her attorneys then sent a letter to the Superintendent of Schools, dated December 8,1959 again asking for 1 ‘ a statement * * * setting forth the nature of the disability with as much of a detailed summary as possible.” Miss Frank, at no time, had received any report by the Board of Education relating to such alleged disability. The letter further challenged the propriety and legality of both respondents’ refusal to permit an inspection of the records.
A further letter was addressed to the Superintendent of Schools on December 9, 1959 wherein she acknowledged receipt of a letter dated December 4,1959 from the Teachers’ Retirement System requesting her appearance before the Medical Board on December 15, 1959. Reference was made to that portion of that letter wherein she was requested “ to appear and present all ‘ x-ray or laboratory data that might be helpful in reaching a diagnosis ’.”
The attorneys pointed out to the Superintendent the following: “ I find it incomprehensible how any person can present x-ray and laboratory data, when the Board of Education at no time has indicated the nature of the disability.” Again a request for such data was made.
On December 30, 1959 the Teachers’ Retirement System sent a further notice to the petitioner directing her to appear on January 12, 1960 for the medical examination. It was this latter direction to appear which was directed to be withdrawn by the respondents by the order of this court dated July 6, 1960. It was further held in the order ‘ ‘ That the actions taken by the Board of Education are without legal basis, are unwarranted and arbitrary, and it is further ordered that the hearing held on September 25, 1959 is null and void and it is further ordered that the resolution adopted by the Board of Education on October 22,1959 is null and void.”
In an opinion dated June 15,1960 (33 Misc 2d 1075) the court, summarizing the arguments of both sides, said as follows: ‘ ‘ The sole issue presented for consideration is whether the Board of Education complied with the statutory requirements, Administrative Code, and its by-laws. ’ ’ Reference is then made to section 2568 of the Education Law and the court ruled that based upon that section (Matter of Groad v. Jansen, 13 Misc 2d 741) the so-called report of the principal was in fact not a report. It was further pointed out that under subdivision lb of section 89 of the By-Laws of the Board of Education, it is provided that a *759 copy of all official reports “be given to the teacher affected within ten days from the date of filing. ’ ’
The answer to the first petition contained a copy of the resolution, Exhibit 1, wherein the medical report of June 24, 1959 is disclosed as containing the diagnosis of “ psychosis paranoid type ”. The report further contained the following finding by a panel psychiatrist who had seen her on December 11, 1950 and March 11, 1955 and again on June 11, 1959: “It is apparent that this lady is unable to get along with her superiors because of the feelings of being misunderstood and because of frank delusions of persecution. The intensity of her reaction to intrusion is deemed to be abnormal. It is concluded that she suffers from an emotional illness which interferes with her ability to function satisfactorily. It is recognized that she has not insight into her emotional illness, a fact which makes it difficult for her to accept her difficulties, to seek psychotherapy, or, likely, to accept the recommendation being here submitted. However, it is best for all concerned that she be retired. ’ ’ Peculiarly so, this finding is not factually supported in the record, not a single detailed fact is set forth upon which these conclusions are reached nor are the incidents or statements of others upon which these findings are based, set forth. It is a conceded fact that at all times the petitioner had been rated satisfactory insofar as her work was concerned. The law secretary’s affidavit submitted for the respondent states that “ It is contrary to the practice of the Medical Board to disclose the nature of the disability which prompted the Board of Education’s application to the Teachers’ Betirement Board to examine the petitioner for disability retirement.” Furthermore “ Medical examination and findings of the Teachers’ Betirement Board is controlling with respect to the disability retirement of a teacher regardless of whatever the Medical Board of the Board of Education may have found.”
In reply a further affidavit of the petitioner showed a satisfactory rating as late as June 26, 1959 by the very same person who had addressed the so-called report to the Board. In addition the Director of the Bureau of In-Service Training on June 25, 1959, wrote a personal letter to the petitioner in which she said: “ I wish to thank you for your excellent service in the weeks you have been working in this Bureau. You have handled the typing related to salary differentials and other routines with care and efficiency. Of course I know that your background as a school clerk has been invaluable. However, I have noticed your willingness to do whatever was asked of you. I wish there *760 had been time for me to take advantage of your ability to take dictation. It was a big help also to have you set up a file and receive and check the cards and records sent in by the In-Service instructors. * * * May I add that, particularly in these final weeks of pressure, I have appreciated your courtesy and your willingness to co-operate with the Bureau staff.” These are the matters set forth in the first proceedings initiated by the petitioner.
The present petition shows that the order of this court, dated July 6,1960, was not recognized by the Board until February 23, 1961 when at a meeting it adopted the following resolution: “ Resolved, that the Board of Education rescind its action adopted at the meeting of October 22, 1959, requesting the Teachers’ Retirement System to retire, because of disability, Esther Frank, school secretary, previously assigned to Public School 241, Brooklyn.”
Meanwhile, on January 26, 1961 on two days’ notice, the petitioner was transferred from the In-Service Bureau to the position of school secretary effective as of February 1, 1961 in Public School No. 241. On February 1,1961 petitioner reported for duty at that school. On February 27 the Principal received a copy of the resolution heretofore referred to. On that same day she wrote a letter to the Superintendent of Schools as follows: “ After consultation with my assistant superintendent, and in accordance with the by-laws of the Board of Education, I request that a physical and medical examination be given to Miss Esther Frank, a school secretary assigned to Public School 241, Brooklyn.” Nothing is set forth in any of the papers showing the nature of the “consultation”. The report dated February 27,1961 attached to that letter, sets forth reasons for the request for the physical and medical examination. It is this court’s considered opinion that this does not constitute a report within the meaning of section 2568 of the Education Law. The so-called report is a conglomeration of conclusory matter unsupported by such detail as would advise the receipient of the actual complaints. Paragraph 1 states “Miss Frank antagonizes all the people who come in contact with her in the office. She has reduced the other secretary to tears and upsets her constantly by reminding her that she [Miss Frank] has had a great deal of experience and knows everything that should be done and that the other one knows nothing.” A report should state the people who were antagonized, the time, place and circumstances of the incidents forming the basis of such report. No further reference is made to the “ other secretary” other than in a letter addressed by the petitioner to the Superintendent *761 of Schools where she calls his attention to the fact that this other secretary, a Mrs. Eva Goldstein, was sent to this school on February 1,1961 the same day that she was, and who worked only three days per week. It would have been interesting to know the circumstances which prompted the transfer of Mrs. Goldstein to this school and the reasons for the transfer to the same school on the same date of these two school secretaries.
In paragraph 2 it is stated: “ She appears to have a superior attitude towards the teachers, so that she has antagonized them.” Who, when, where, how, and why, should have been set forth.
In paragraph 5 it is stated: “ She has spoken derogatorily to parents concerning the Principal.” Again, the circumstances should have been set forth and the persons to whom this was allegedly done and the subject of the conversation.
The same criticism is made concerning each and every one of the alleged specifications in the so-called report.
It is peculiar indeed that on January 30, 1961 the person in charge of the Bureau of In-Service Training on the “ Individual Grading Report ” stated that the petitioner’s service had been “ satisfactory ”. Not only is that peculiar, but on June 30, 1961 this same Principal who “ after consultation” with the Associate Superintendent had sent the so-called report rated her work as satisfactory for the period from February 1 to June 30, 1961.
In response to that so-called report, the petitioner addressed a letter to the Superintendent of Schools on February 27, 1961. This letter was not answered until January 9, 1962 under circumstances hereinafter set forth. She points out that her notice of transfer to Public School No. 241 was given just two days prior to the effective date, February 1, and that “ the privilege of selecting a school, as it has been with other secretaries assigned to the Board of Education, was not granted to me.” She further states “I have had no words with either Mr. Malachowsky, Assistant Principal, who was appointed or assigned to this school in October 1960, nor with Mrs. Eva Goldstein, school secretary, who was appointed for three days a week on February 1, 1961. This, I believe, speaks for itself. They are newcomers and will do and say whatever they are told, I feel, for fear of reprisal.”
She then made the following request: “May I request an appointment to see you.” Instead of compliance with that request she was directed by the Superintendent of Schools to appear for medical examination on April 17,1961. This request was made at the direction of the very same Associate Superintendent who had guided the activities of the Board prior to the *762 previous article 78 proceeding. The petitioner appeared and was examined on April 20,1961. On May 29,1961 the petitioner was informed by the Associate Superintendent that there would be no need for further examination if she retired effective as of September, 1961. Petitioner refused to comply with this request and stated that she had informed the Medical Board that she would retire in February, 1963. By letter dated June 14, 1961 she was directed to appear before Dr. Morton Goldman on June 21, 1961. She did so appear and was examined. On October 31, 1961 she was directed to appear at Mr. Gannon’s office “ in reference to your ability to render continuous and efficient service as a school secretary ’ ’. She says that the interviewer at that time informed her that no further steps would be taken if she agreed to retire in February, 1962 rather than February, 1963. Following her refusal to accede to such request, she received the letter of October 31, 1961. The appearance was adjourned to December 8, 1961 when she did appear. She was questioned, so she says, and subjected to a “ hearing where she was questioned on various matters, data and records, copies of which she had never received.”
On December 8, 1961 a letter was addressed to Retirement requesting the compulsory retirement because of disability of the petitioner and on December 27, 1961 a letter was sent to the petitioner from the Retirement System calling upon her to retire voluntarily or appear for medical examination before the Medical Board of the Retirement System on January 9, 1962.
The answer attaches a resolution dated November 1, 1961 wherein is reiterated the Principal’s report and the medical report under date of May 2, 1961 where the following finding was made: “Diagnosis — paranoid state”. This examination was continued in the light of the specific reasons submitted to the Superintendent by her Principal on February 27, 1961. “ We recognize that there is an emotional problem in this lady which precludes her working satisfactorily in a school environment. Her rigidity, her inability to get along with her supervisors and even her air of superiority towards teachers makes it impossible for her to serve satisfactorily as a school secretary. If there were no other place for her services within the school system we would have no choice in view of this emotional problem, but to recommend retirement.” Again it must be pointed out that the facts upon which this finding was made are not set forth in the report. The report states that it is impossible for her to serve satisfactorily yet every rating this petitioner received was “ satisfactory.” Who supplied the information to this doctor who made the examination; what were *763 the facts, time, place and circumstances of the events described to him?
In view of the fact that this petitioner was denied access to her personnel file and access to the records upon which this report is based, she is not the one who can supply this information. Yet the respondents failed to do so.
A further report was made on July 12, 1961 by the Medical Bureau, substantially the same as the previous one, and again no facts are described.
In his supporting affidavit in the answer the Superintendent states that the only issue “ for this court’s determination of the instant proceedings is the right of the Superintendent of Schools of the respondent Board of Education to require the petitioner to appear before the Teachers Retirement System in accordance with the provisions of Section B20-42.0 of the Administrative Code.” It is claimed that the recital of all of the past incidents are entirely irrelevant and immaterial and the right of the Board to proceed in the manner outlined cannot be challenged, so he claims, because it is the regular and routine procedure.
A reply affidavit by the petitioner relates that in the Spring of 1961 she saw a Mr. Coshburn, an Administrative Assistant in charge of records, who would not permit her to see her file. He told her to obtain permission from Dr. Gannon [Associate Superintendent of Schools], On April 11, 1961 he was asked permission and did refer her to the respondent’s law secretary. He called the Corporation Counsel on the telephone and after this telephone conversation informed the petitioner that she could not see the file.
She attaches a letter from John B. King, Associate Superintendent of Schools, dated June 28,1961, wherein he stated “ This is to tell you how grateful I am for your typing of the progress report of the Open Enrollment Program in the elementary schools. I am most appreciative of your cheerful and kind co-operation. The report is beautiful, thanks to your efforts.”
On January 9, 1962 for the first time, the Superintendent of Schools wrote to her in response to her letter of February 27, 1961 and he said: “ I would assume therefore that the contents were given full consideration in connection with the recent action taken by the Committee which voted that you be retired for medical reasons. Under the circumstances, I regret that there is nothing I can do in this matter.” For the first time on January 9, 1962 did the Superintendent of Schools, in writing, refuse access to the records.
On January 26,1962 Dr. Gannon called the petitioner into his office and inquired as to why she had failed to appear for exami *764 nation before the Teachers’ Retirement Board. She informed him that her attorneys had agreed to an adjournment with the Board. Without further investigation thereof appearing in the record, he sent her a letter on January 26, 1962 as follows: ‘ ‘ I hereby charge you with insubordination conduct unbecoming your position, conduct prejudicial to the good order, efficiency and discipline of the service. I, therefore, suspend you, without pay, from your position as school secretary, Public School 241, Brooklyn, effective as of the close of business this 26th day of January, 1962.” The impetuousness of this letter is recognized in a further letter dated February 1, 1962 wherein the Superintendent of Schools sent her the following letter: “ On January 26, 1962, I sent you a notice of suspension, without pay, from your position as school secretary at P. S. 241, Brooklyn, effective as of the close of business on the 26th day of January 1962. I am now advised that your matter is in litigation before the courts. Please be advised that I have temporarily cancelled the suspension pending the outcome of this litigation. Accordingly your status will revert back to the situation existing on January 26, 1962 and you are hereby directed to report to Dr. Gannon’s office as heretofore.”
Subdivision 7b of section 89 of the By-Laws of the Board of Education, reads as follows: “ All official reports to a superior officer, to the Board of Examiners, or other official body of the Board of Education of The City of New York required by law or By-Laws of the Board of Education, shall be made in duplicate; and a copy thereof shall be given to the teacher affected within ten days from the date of filing.”
Section 2568 of the Education Law specifically states that findings following a report that sets in motion the medical examinations “ shall be reported.”
The court finds nothing in the record which warrants the action of the Board of Education in refusing access to its files in order to enable this petitioner to know what the specific facts are upon which the several reports are based. The conclusion reached by the law secretary and the other members of the Board of Education, that the respondents have the right to withhold such information from the teacher faced with compulsory retirement, is entirely arbitrary, capricious and without legal basis.
In the various forms submitted to the petitioner, information is requested which cannot be supplied by the petitioner unless access to these files is had.
It is the considered opinion of this court that the direction to the petitioner to appear for medical examination before the *765 Teachers ’ Retirement Board is null and void because of the failure of the respondents to have complied with the provisions of law requiring that copies of all proceedings and all medical reports be furnished to her to enable her to properly prepare against such move for compulsory retirement.
Accordingly the papers submitted by the respondents furnish no legal basis for withholding them from her. Inherent in the prior decision of this court was a holding to the same effect. Persistent refusal of the respondents to follow the suggested procedure cannot avoid such procedure.
Consequently, an order is directed to be made herein granting the application of the petitioner declaring the hearing held on December 8, 1961 to be null and void, declaring the resolution adopted by the Board of Education requesting the Medical Board for a medical examination to be null and void, directing the Board of Education to withdraw its request from the Medical Board of the Teachers’ Retirement System for a medical examination for the petitioner, and directing further that in the event further proceedings are had against this petitioner, the Board of Education must either furnish the petitioner with copies of all findings and all official reports and all medical reports pertaining to her or permitting the petitioner and her duly appointed representative to examine her personnel file. The principal’s report is declared to be null and void. A report such as this must contain facts and not conclusions.