Murray T. Feiden, J.
This is an article 78 proceeding for an order canceling and annulling the written request of the respondent, Calvin E. Gross, as Superintendent of Schools (hereinafter referred to as the “ Superintendent”) to the respondent, the Teachers’ Retirement System of the City of New York, to retire the petitioner herein for disability; canceling and annulling the written direction of the respondent, the Teachers’ Retirement System of the City of New York, to the petitioner to appear for examination by its Medical Board to determine whether or not petitioner should be retired pursuant to the request of the Superintendent; and canceling any resolution that the Board of Education of the City of New York may have adopted recommending that the petitioner be retired for disability.
In the above proceeding, commenced by order to show cause, the respondents were stayed from “ enforcing the direction that the petitioner submit to a physical examination by the Medical Board of the respondent, the Teachers’ Retirement System of the City of New York, or any member of said Medical Board ”. By a separate and later order to show cause the petitioner seeks an order to punish an Assistant Administrative Director of the Board of Education and an Assistant Corporation Counsel for contempt of court for allegedly violating the above-mentioned stay. There is no showing that the petitioner was compelled to or did in fact submit to any examination as prohibited in the stay. Furthermore, the decision of this court in the article 78 proceeding will be dispositive of all the issues between the parties. Consequently, in the present posture of the litigation, the motion to punish for contempt is denied.
This leaves open for consideration the article 78 proceeding. The petitioner here was appointed as a permanent teacher in the New York City school system in 1921, and holds tenure under the provisions of the Education Law. Pursuant to the *692 order of the Superintendent, she submitted herself for a medical examination on February 18,1963, qnd for psychiatric examinations on March 29, 1963, and May 27, 1963, by doctors of the medical staff of the Board of Education. Thereafter, without affording the teacher any hearing, the Superintendent sent a letter to the Teachers’ Retirement System requesting that the petitioner be retired for disability. The letter, dated June 18,1963, reads as follows: “ In accordance with the provisions of Section B20-42.0 of the Administrative Code of the City of New York, the Superintendent of Schools requests the Teachers’ Retirement System to retire, because of disability, Mrs. Adele Munter, teacher assigned to Public School 7, Bronx.”
On August 21,1963, the Teachers’ Retirement System notified the petitioner to appear for examination before its own Medical Board. The petitioner then instituted the article 78 proceeding herein which contains the stay hereinbefore mentioned. It appears that petitioner was thereafter told that she was not to report for work and was prohibited from signing the time book so that in effect she is being compelled to be on sick leave against her wishes.
The issues herein revolve around certain by-laws and statutes which, so far as pertinent herein, are as follows:
Section 105a-2 of the By-laws of the Board of Education: “ Any person in the employ of the Board of Education who is summoned to appear before the Superintendent of Schools, or any person or a committee designated by him, for the determination of such person’s ability to render continuous and efficient service as based on medical reports, shall receive written notice of the time and place of the meeting, mailed to the person so summoned, addressed either to the school or to his last known address, specifying the matter to be considered, at least one week before the date specified for the said meeting. The notice shall inform the said person that he is to appear in person, and if he so elects, may be accompanied and advised by an employee of the Board of Education and introduce any relevant evidence.”
Section 255A-a (subd. 3, par. d) of the Education Law, enacted as an emergency measure on August 21, 1961 and effective only until July 1,1962:
‘ ‘ 3. During the emergency period, the board of education of the city school district of the city of New York shall have specifically, the power: * * *
“ d. To authorize the superintendent of schools and the Administrative staff of the district by by-law, rule, regulation *693 or resolution to exercise on its behalf such of its administrative and ministerial powers and duties with respect to the administration of the city school district * * * as the board deems necessary or desirable ”. Pursuant to the above section a resolution was adopted by the Board of Education on November 21, 1961, which in substance provided for a delegation of the administrative powers of the Board of Education specifically excluding any powers and duties relating to investigative or judicial functions. There does not seem to be anything in the resolution which would cover retirement except indirectly and merely by way of an explanatory note wherein it was stated that the foregoing resolution would permit the removal from the Board of Education calendar matters relating to recommendations for retirement and retirement matters ‘1 in those instances in which the actions are in accord with established policy.” (See Nov. 21, 1961, minutes of meeting of Bd. of Educ., pp. 2375-2379.)
It is to be noted that although the above-mentioned law, under which the resolution was promulgated, was for an emergency period expiring July 1, 1962, but none of the acts complained of here occurred during this emergency period. Although the aforesaid statute and resolution of November 21, 1961 were no longer in force, attention is called to them because the respondents’ actions seem to be predicated upon the erroneous assumption that the alleged delegation of powers to the Superintendent was still valid and in force when in fact such delegation had lapsed.
Section 2554 (subd. 13, par. b) of the Education Law, effective April 19, 1962, also relied on by the respondents, provides:
“ § 2554. Powers and duties of board of education. * * *
“ b. In a city having a population of one million or more, the board of education shall prescribe such regulations and by-laws authorizing the superintendent of schools to exercise such of its administrative and ministerial powers as the board may deem necessary to make effectual the provisions of this chapter * * *. If in the exercise of its discretion * * * the board of delegates any of its administrative and ministerial powers to the superintendent of schools, such superintendent shall exercise such delegated powers in the same manner and with the same force and effect as if such powers were given to him under the provisions of the education law.” And subdivision 3 of section 2566 of the Education Law, effective April 19,1962, provides:
*694 “ § 2566. Powers and duties of superintendent of schools. * * * I
“3. In a city having a population of one million or more, to exercise such administrative and ministerial powers of such board as may be delegated to him by regulation and by-laws of such board in such manner and with the same force and effect as if such powers were given to him by the provisions of the education law.”
The respondents, have not submitted any regulations or bylaws promulgated .by the Board of Education under sections 2554 (subd. 13, pail b) and 2566 (subd. 3) delegating any of its powers to the Superintendent of Schools.
Section B20-42.0 of the Administrative Code of the City of New York provides: “Retirement; for disability. Upon the application of the head of the department in which a contributor is employed * * * such board shall retire such contributor for disability, provided the medical board, after a medical examination of such contributor * * * shall certify to such board that such contributor is physically or mentally incapacitated for the performance of duty ”.
In determining the meaning of ‘ ‘ head of the department ’ ’, the following statutes are applicable:
Section B20-1.0 of the Administrative Code defines a teacher as follows: “7. ‘ Teacher’ shall mean the superintendent of schools * * * ¡heads of departments, and all regular and special teachers f * * and all employees of the board of education ’ ’.
Section 2566 of the Education Law provides:
“ The superintendent of schools of a city shall possess, subject to the by-laws of the board of education, the following powers and be charged with the following duties:
“ Í. To be the chief executive officer of such board and the educational system), and to have a seat on the board of education and the right to speak on all matters before the board, but not to vote.”
The petitioner contends:
(1) Section 105a-2 of the By-Laws of the Board of Education made it mandatory for the petitioner to be granted a hearing so that she could have an opportunity to offer evidence on her behalf. )
(2) That in any) event, even if a hearing was not mandatory, the statutes and the practice and procedure of both the Board of Education and the Teachers’ Retirement System required the adoption of a resolution by the Board of Education recom *695 mending petitioner’s retirement for disability before any proceedings could be instituted with the Teachers’ Retirement System; that no such resolution was adopted by the Board of Education and that it was not within the power of the Superintendent of Schools to institute proceedings or to request petitioner’s retirement for disability, such power being vested with the Board of Education only.
(3) That the action of the Teachers’ Retirement System in requesting petitioner to appear before its Medical Board, based on the unauthorized request of the Superintendent of Schools, was unlawful.
The respondents contend:
(1) That section 105a-2 of the by-laws did not mandate a hearing; that such by-law merely provided for summoning the petitioner to appear before the Superintendent at the option of the Superintendent; and that in any event said by-law was superseded by the resolution of November 21,1961.
(2) That under section 2554 (subd. 13, par. b) of the Education Law the Board of Education delegated its duties to the Superintendent so that any act of the Superintendent was in effect the act of the Board of Education.
(3) That apart from the foregoing considerations the Superintendent of Schools had the power under section B20-42.0 of the Administrative Code to recommend that the Retirement Board retire petitioner for disability inasmuch as he was the head of the department in which the petitioner is employed. It is contended that under subdivision 1 of section 2566 of the Education Law the Superintendent is the chief executive officer of the Board of Education and therefore the head of the department.
The court will first consider the interpretation to be given section 105a-2 of the By-Laws of the Board of Education. The court rejects the contention of the respondents that said by-law Avas superseded by the November 21, 1961 resolution, for there is nothing in that resolution which is inconsistent with or supersedes the aforesaid by-law. The troublesome question here is whether the Avording of that by-law gave the petitioner the absolute right to a hearing. The meaning of said by-law is far from clear. Much can be said for the contentions of either side in this dispute. On the one hand, a strict interpretation of the language Avould not warrant the conclusion that it provides for a mandatory hearing. On the other hand, an appraisal of the intention of the by-law in its entirety, having in mind its detailed instructions as to the manner in which a teacher is to be notified of a request to appear and the safeguards afforded *696 to such teacher, leads one to the conclusion that an intention to provide a mandatory hearing is implicit in said by-law.
The latter interpretation is fortified by the fact that the respondents have failed to come forward with any proof to rebut the petitioner’s contention that, with the exception of the instant case, it has been the established policy of the Board of Education to give hearings in all other similar cases (see procedure followed in Matter of Franck v. Board of Educ. of City of N. Y., 33 Misc 2d 754 and Matter of Franck v. Board of Educ. of City of N. Y., 33 Misc 2d 1075, 1076, revd. on other grounds involving the merits in 19 A D 2d 741; Matter of Derenna v. Board of Educ., N. Y. L. J., Oct. 1, 1962, p. 15, col. 8, Supreme Ct., Kings County, Spec. Term, Part I, Rinaldi, J.).
This court feels that in view of the dire consequences that could ensue to a teacher if the Board of Education’s interpretation of this by-law is accepted, and any ambiguity in the meaning of the said by-law should be construed in favor of petitioner. In recommending retirement the Board of Education or its Superintendent is in effect exercising quasi-judicial powers. Therefore, procedural standards in consonance with the judicial nature of such power should be applied in order to fulfill the requirements of constitutional due process of law. Although the Board of Education or its administrative officers may have the power to make rules, nevertheless those rules should be reasonable and should not violate principles of fairness or due process. In quasi-judicial proceedings where the facts are in dispute due process requires a hearing. These principles are well set forth in the concurring opinion of Judge Van Voobhis in Matter of O’Brien v. Commissioner of Educ. (4 N Y 2d 140,145-148). See, also, Anti-Fascist Comm. v. McGrath (341 U. S. 123, 164).
Even if we assutne, arguendo, that a hearing is not mandatory, the respondents must nevertheless show statutory authority for the actions of the Superintendent in requesting retirement of the petitioner. Originally, until its error was pointed out in oral argument, the respondents took the position that under section 2554-a of the Education Law (L. 1961, ch. 971) the Board of Education had the power to delegate its duties to the Superintendent of Schools and that the resolution adopted by the board on November 21, 1961 encompassed such delegation of duties to the Superintendent. However, when it was pointed out that said law (and hence the resolution promulgated pursuant thereto) was for an emergency period ending July 1, 1962, and that the Superintendent’s actions complained of herein were performed after such date, the respondents, after *697 conceding that the aforesaid statute was no longer applicable, shifted its position and contended that section 2554 (subd. 13, par. b) of the Education Law authorized the Superintendent’s actions. An examination of the latter section indicates that it merely gives the Board of Education the power to delegate its duties but no resolution or rule was ever promulgated by the Board of Education effectively delegating its powers as authorized by said statute. We thus have a situation where the Board of Education could have delegated its powers but either through inadvertence or for reasons best known to itself failed to consummate such delegation of powers. There is no dispute that prior to the above statutes it was only the Board of Education which could make a request to the Teachers’ Retirement System, and this was in fact the procedure regularly adopted up to the time that it was sought to compel the retirement of the petitioner herein.
It thus appears that it was only the Board of Education who could request petitioner’s retirement absent any statute, rule or by-law delegating its powers to the Superintendent of Schools. The respondents, as a last resort, rely on section B20-42.0 of the Administrative Code and subdivision 1 of section 2566 of the Education Law. Under the aforesaid section of the Administrative Code retirement for disability can be made upon the application of the head of the department in which a contributor is employed. It is argued that the Superintendent is the “head of the department” inasmuch as subdivision 1 of section 2566 of the Education Law indicates that the Superintendent of Schools, subject to the by-laws of the Board of Education, is charged with the duty of being the Chief Executive Officer of such board.
It would seem to this court that making the Superintendent of Schools the chief executive officer does not make him the head of the department within the meaning of the Administrative Code. An executive officer is one who carries out and enforces the orders and policies of the Board of Education. He does not make policy nor does he or should he have the power to decide whether a teacher should be removed or retired unless that power is specifically delegated to him. Under subdivision 7 of section B20-1.0 of the Administrative Code the definition of “ teacher ” includes a Superintendent of Schools, heads of departments, and all regular and special teachers of the public school system as well as all employees of the Board of Education. It would appear to this court that the term ‘ ‘ head of department ” when used in section B20-42.0 of the Administrative Code was intended to designate the chief of all of the employees *698 coming within the definition of a teacher. In other words, it is the Board of Education which is the head of the department of the school personnel. The educational system is not run by an individual head of department, such as the Fire Commissioner or Police Commissioner. On the contrary, in the educational system the head happens to be composed of a board and it is that board that is the head of the department to which is entrusted the right to request an employee’s retirement for disability. That has been the interpretation of that provision since its enactment and that is the way in which the Board of Education and the Teachers’ Retirement System has heretofore proceeded. As of the present time the Board of Education has not adopted any resolution, by-law, rule or regulation to delegate its powers in connection with retirement requests to the Superintendent of Schools. The best proof that such a resolution is necessary is the Board of Education’s own resolution of November 21,1961, in which it took the necessary steps to delegate its pqwers under subdivision 3 of section 2554-a which expired on July 1,1962.
The court is not impressed by the tenuous contention of the respondent that the passage of section 2554 (subd. 13, par. b), effective April 19, 1962, which overlapped the July 1, 1962 expiration date of subdivision 3 of section 2554-a served to revive and continue the resolution of November 21, 1961. It is hard to see how a resolution passed under an emergency statute with a fixed time limit could have its effect continued under a statute subsequently passed when there was no emergency and when the latter statute did not specifically indicate an intention on the part of the Legislature to effectuate such result. A reading of the minutes of the meeting in which the November, 1961 resolution was passed indicates that the board had some qualms about delegation of its powers and definitely considered said resolution as temporary in nature. At page 2379 of the minutes the following appears: “On motion, the resolutions were adopted subject to the continuing review and study of the matter of delegation of authority.” The intention is therefore crystal clear that this resolution was not to have any permanency. Absent any resolution by the board to continue its delegation of authority under the new statute, it would be a disservice to the Board of Education itself as well as to the petitioner to hold that it had delegated its authority to the Superintendent in this area.
However, even if we were to agree with respondents’ contention that the 1961 resolution was still in full force and effect, it would still give little comfort to the action of the *699 Superintendent in this case, because that resolution clearly indicated that the delegation of powers to the Superintendent in connection with recommendations for disability retirements was to be exercised only in “ those instances in which the actions are in accord with established policy ”. (Last paragraph of page 2378 of the Board of Education minutes of Nov. 21, 1961.) As previously indicated, it appears from the papers before this court that the established policy of the board at the time in question was to grant hearings which it did not do in the instant case.
This court does not pass judgment on the petitioner’s alleged disabilities. It may very well be that on the merits respondents will ultimately prevail, but the end does not jusify the means adopted here, which could have far-reaching consequences affecting the rights of teachers. Although the request for retirement may have been based upon substantial medical evidence, it does not authorize improper and unlawful procedure. As was stated by Mr. Justice Frankfurter in Anti-Fascist Comm. v. McGrath (341 U. S. 123, 164, supra): “ ‘ in the development of our liberty insistance upon procedural regularity has been a large factor ’ ” and “ It is noteworthy that procedural safeguards constitute a major portion of our Bill of Rights.” It appears that the petitioner has not been the beneficiary of any procedural safeguards in this case.
Petitioner’s application to punish for contempt is denied. The petitioner’s article 78 application is granted. The various actions of respondents set forth in the petition’s prayer for relief and the actions of respondents’ subordinates which have prohibited petitioner from signing the time book and reporting for work resulting in petitioner being compelled to be on sick leave against her wishes are annulled.